# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| JON KOREF,<br><br>  Plaintiff,<br><br>V.<br><br>NANCY A. BERRYHILL,<br>**Acting Commissioner of Social Security,**<br><br>  Defendant. | CIVIL ACTION NO. 17-238-KKC<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on cross-motions for summary judgment (DE 12; 14). The Plaintiff, Jon Koref, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision denying his claim for Disability Insurance Benefits. The Court, having reviewed the record, will affirm the Commissioner's decision because it is supported by substantial evidence and was decided by the proper legal standards.

## FACTUAL AND PROCEDURAL BACKGROUND

An Administrative Law Judge ("ALJ") denied Koref's claim (Administrative Record ("AR") 21) and Koref now petitions this Court to review the decision of the presiding ALJ. The Court's review of the Commissioner's decision is limited to determining whether it "is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).

In denying Koref's claim, the ALJ engaged in the five-step sequential process set forth in the regulations under the Social Security Act (the "Act"). 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

At step one, the ALJ determined that the claimant has not engaged in substantial gainful activity since December 26, 2013, the alleged onset date. (AR at 23.)

At step two, the ALJ determined that Koref suffers from a bipolar disorder/mood disorder, a severe impairment (20 CFR 404.1520(c)) (AR at 24.) Conversely, the ALJ classified Koref's status post excision, obstructive sleep apnea, type II diabetes, and history of squamous cell carcinoma as nonsevere impairments. (AR at 24.)

At step three, the ALJ found the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR pt. 404, subpt. P, app. 1 (20 CFR 404.1520(d), 404.125, and 404.1526). (AR at 25.)

The ALJ determined that Moore has the residual functional capacity (RFC) to perform "simple, routine work tasks" and "can maintain attention as well as concentration for two-hour segments during an eight-hour work day." (AR at 27.) In addition, the ALJ noted that Koref "can adapt to gradual changes in a routine work environment," but should not be required to meet "fast-paced production quotas or goals." (AR at 27.)

At step four, the ALJ found that Koref is unable to perform his past relevant work as a truck driver or a stock clerk pursuant to 20 CFR 404.1565. (AR at 29.)

At step five, the ALJ determined that while Koref could not perform any past, relevant work, he retains the ability to perform other jobs that exist in significant numbers in the national economy. (AR at 29.) Accordingly, the ALJ concluded that Koref is not disabled.

## ANALYSIS

Koref raises three objections to the ALJ's decision. He first argues that the ALJ improperly discounted his treating physician, Dr. Welch's medical opinion. Second, Koref contends that the ALJ failed to consider his anxiety as a distinct impairment (AR at 17.) And finally, Koref's third argument suggests that the ALJ erred in finding that his symptom testimony lacked credibility. The Court agrees with the ALJ's determinations on all three of these issues.

### I. The ALJ Did Not Err in Discounting the Opinion of Dr. Welch.

ALJs must "evaluate every medical opinion [they] receive" about a claimant and give "controlling weight" to opinions from treating sources "[i]f [they] find that a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 CFR § 404.1527(c), (c)(2). In the event an ALJ decides not to afford the treating physician's opinion controlling weight, he or she must provide "good reasons" for doing so. *Id.*

Dr. Welch's opinion includes several observations regarding Koref's ability to engage in work-related activities. (AR at 385.) In the mental abilities and aptitudes chart, Dr. Welch marked that Koref was "unable to meet competitive standards" when making simple work-related decisions, getting along with coworkers, and dealing with stress. (AR at 385.) And in the same chart, Dr. Welch marked that Koref had "no useful ability to function" in the categories of (1) maintaining attention for two-hour intervals, and (2) completing a normal workday without interruptions from his symptoms. (AR at 385.) Dr. Welch further noted that Koref had experienced three episodes of decompensation within the last twelve months and that Koref's impairments would cause him to miss more than four days of work per month. (AR at 387.) Dr. Welch then indicated that Koref experienced "extreme" difficulties in maintaining concentration, persistence,

and pace. (AR at 386.) Presumably considering all the above listed factors, Dr. Welch attributed a GAF score of 57 to Koref.

When developing Koref's residual functional capacity ("RFC"), the ALJ gave Dr. Welch's opinion "little weight." (AR at 28.) In support of this decision, the ALJ observed that the severe limitations described in Dr. Welch's report were unsupported by, and even contradictory to, the record. (AR at 28.) Koref argues that this concise rejection of his treating physician's opinion is "entirely insufficient and contrary to the facts of the instant case." (DE 12.) The Court disagrees.

Though undoubtedly short in nature, the reasoning provided by the ALJ is adequate. As explained by the Sixth Circuit in *Bledsoe*, a finding by the ALJ that the treating physician's opinions are inconsistent with the record is a sufficient reason for discrediting those opinions. *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006). Here, portions of Dr. Welch's opinion are inconsistent with excerpts from his own treatment notes. For example, Dr. Welch concluded in his opinion that Koreff experiences "extreme" difficulties maintaining concentration, persistence, and pace. (AR at 386.) However, in his treatment notes, Dr. Welch repeatedly observed that Plaintiff's attention and concentration capacities were "adequate." (AR at 266; 272.)

In addition, Dr. Welch detailed in his report that Koref had experienced three or more episodes of decompensation (each lasting at least two weeks) within the previous twelve months. (AR at 386.) Severe in nature, spans of decompensation are described as "exacerbation[s] in symptoms or signs that would ordinarily increase treatment or a less stressful situation (or a combination of the two)." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(4). Episodes of decompensation can be "inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system," which can include "hospitalizations, placement in a halfway house, or a highly structured and

directing household." Other information regarding the "existence, severity, and duration of the episode" can also support the inference. *Id.*

There is substantial evidence in the record that negates Dr. Welch's determination that Koref had undergone three or more periods of decompensation within the preceding twelve-month period. Although it is undisputed that Koref altered his medication regimen on several occasions, progress reports from psychiatrists (in the twelve-month period preceding Dr. Welch's report) mostly indicate that Koref's condition was "improving." (AR at 423, 426; 429.) In addition, none of the progress reports from the relevant period suggest that Koref needed a more structured system or in-patient treatment. *See* 20 CFR. pt. 404, subpt. P, app. 1, § 12.00(C)(4).

Third, Dr. Welch attributed a GAF score of 57 to Koref. (AR at 384.) This score corresponds with moderate symptoms and moderate difficulties in "social, occupational, or school functioning." *DSM-IV-TR* at 34. The GAF score therefore, does not align with the severe limitations described in Dr. Welch's opinion. On this record, the Court finds no error in the ALJ's conclusion that Dr. Welch's assessment regarding Koref's impairments was inconsistent with his treatment notes. *See Price v. Comm'r Soc. Sec. Admin.*, 342 F. App'x 172, 177 (6th Cir. 2009).

Were this not enough, the Sixth Circuit has also determined that an ALJ may accomplish the goals of [the] procedural requirement by *indirectly* attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010). By giving controlling weight to other physicians and calling into question the credibility of Koref's own symptom testimony, the presiding ALJ indirectly attacked Dr. Welch's opinion. *See id.* The Court finds that the ALJ's evaluation of other record evidence tends to show that Dr. Welch's opinion lacks the "support and consistency required to compel controlling weight." *Id.* at 441.

5

Lastly, Koref maintains that the ALJ failed to address the opinion of Dr. Welch, which according to Koref, suggests that the criteria of Listing 12.00 were either met or equaled. (DE 12.) Koref specifically argues that the ALJ made no mention of Dr. Welch's opinion at step three of the sequential evaluation process. (DE 12.) Despite Koref's contentions, the ALJ did not error in her considerations. This is because the law does not require ALJs to "spell out every consideration that went into the step three determination." *Bledsoe*, 165 F. App'x at 411. And, the language of the ALJ's entire opinion makes clear that she considered all of Koref's impairments. The ALJ therefore, considered all evidence as required by 20 C.F.R. § 404.1526.

## II. The Failure to Designate Plaintiff's Anxiety as a Severe Impairment Is Not Legally Relevant.

Koref argues that the ALJ erred in failing find that his anxiety constituted a severe impairment at step two of the sequential evaluation process. (DE 12.) The ALJ did find, however, that Koref suffered from another severe impairment at step two: a bipolar disorder/mood disorder. (AR at 24.) Having found the severe impairment, the ALJ was then required to proceed to the remaining steps of the evaluation. And in making the determination, the ALJ was required to consider "limitations and restrictions imposed by all of [the] individual's impairments, even those that are not severe." *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) (quoting *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007)). Therefore, "so long as the ALJ considered all of the individual's impairments when assessing how much work the claimant can do, the 'failure to find additional severe impairments . . . does not constitute reversible error.'" *Id.* (quoting *Fisk*, 253 F. App'x at 583).

The issue then becomes whether the ALJ adequately considered Koref's anxiety when evaluating his employment capacities. In reviewing the ALJ's opinion, it is apparent that she

considered anxiety as a byproduct of Koref's underlying bipolar disorder/mood disorder. This is evidenced by the ALJ's repeated references to Koref's anxiety and its impact on his ability to function in a work environment. (AR at 25; 25; 29.) As a result, Koref's contention that the ALJ did not consider his anxiety and its effect on his ability to work is unpersuasive.

III.    **The ALJ Was Reasonable in Deciding that Plaintiff's Symptom Testimony Lacked Credibility.**

Koref purports that the ALJ's evaluations regarding his subjective complaints and credibility are erroneous. (DE 12). Based on a review of the record, the Court disagrees. An ALJ's conclusions regarding the credibility of the claimant should be "accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531. To be clear though, an assessment of a claimant's credibility must be bolstered by substantial evidence. *Rogers*, 486 F.3d at 247.

When the ALJ finds contradictions between the medical reports and claimant's testimony, the discounting of the claimant's testimony is appropriate. *See Bradley v. Secretary of Health and Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988). Here, the ALJ noted several inconsistencies between Koref's testimony and the record. These include, but are not limited to, the following discrepancies. First, while Koref conveyed at his hearing that he was sedentary, he had previously reported a greater level of physical activity to his physicians. (AR at 184; 217.) Second, the ALJ also observed that the severity of symptoms reported by Koref at his hearing did not align with his previous descriptions to psychiatrists. Koref specifically asserted at the hearing that his condition was completely debilitating, but his progress reports in the twelve months prior to the hearing indicate improvements with his condition. (AR at 423, 426; 429.)  And, as the ALJ points out,

Koref was never referred to an in-patient facility by his physicians. (AR at 28.) In total, the Court finds that there is substantial evidence to support the ALJ's credibility determination.

## CONCLUSION

For all these reasons, **IT IS HEREBY ORDERED** that:

(1) The Plaintiff's motion for summary judgment (DE 12) is **DENIED**;

(2) The Defendant's motion for summary judgment (DE 14) is **GRANTED**;

(3) The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

(4) A judgment will be entered contemporaneously with this order.

Dated September 12, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY